IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HELEN MILTENBERGER,           )
                              )
         Plaintiff,           )
                              )
    vs.                       )   Civil Action No. 06-1606
                              )
COMMISSIONER OF SOCIAL SECURITY, )
                              )
         Defendant.           )

O R D E R

AND NOW, this __14th__ day of February, 2008, upon consideration of Defendant's Motion for Summary Judgment (document No. 11) filed in the above-captioned matter on August 2, 2007,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 9) filed in the above-captioned matter on July 3, 2007,

IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is

1

hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

## I. **Background**

On February 21, 2003, Plaintiff, Helen Miltenberger, filed her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. R. 24. On October 14, 2003, she applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. R. 24. Plaintiff claimed that she became disabled on December 20, 2002, due to bipolar and post-traumatic stress disorders. R. 25.

Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ"). R. 50-51. In a decision dated May 26, 2005, the ALJ denied Plaintiff's request for benefits. R. 24-31. The Appeals Council declined to review the ALJ's decision on September 27, 2006. R. 6-8. On December 1, 2006, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the

Commissioner's findings of fact. Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g)); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citations omitted). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by counterveiling evidence." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (citations omitted). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period. Fargnoli v. Massanari, 247 F.3d

34, 38-39 (3d Cir. 2001)(internal quotation marks and citations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 404.1520. In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. Id. If so, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to step three and determine whether the claimant's

4

impairment meets or equals the criteria for a listed impairment. 20 C.F.R. § 404.1520. If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520. The claimant bears the burden of demonstrating an inability to return to her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520. In making this determination, the ALJ should consider the claimant's residual functional capacity, age, education, and past work experience. Id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

### III. Plaintiff's Medical Records

Between December 17, 2002, and September 25, 2003, Plaintiff received treatment at Western Psychiatric Institute and

Clinic. R. 124-146. At the time of her discharge, Plaintiff was diagnosed with Major Depressive Disorder and Alcohol Abuse. R. 126.

On August 5, 2003, Plaintiff began treatment at Mercy Behavioral Health ("MBH"). R. 187-93. On September 3, 2003, Ronald Garbutt, M.D., performed a psychiatric evaluation. R. 185-86. Dr. Garbutt diagnosed Plaintiff with Bipolar Disorder, Post-Traumatic Stress Disorder ("PTSD") and Polysubstance Dependence. R. 186. Dr. Garbutt assigned a Global Assessment of Functioning ("GAF") score of 40. R. 186. Dr. Garbutt noted that Plaintiff had previously been prescribed Prozac, Wellbutrin and Neurontin for Major Depressive Disorder and PTSD. R. 185. He prescribed Seroquel "to help her sleep and to stabilize both her mood and her PTSC symptomology." R. 186. Plaintiff's medication record shows that Dr. Garbutt prescribed a number of drugs, including Depakote and Lexapro, between September 2003 and March 15, 2005. R. 194-96.

On September 8, 2003, an MBH social worker completed an Integrated Service Plan, which indicated that Plaintiff had a current GAF score of 55. R. 181-84. Dr. Garbutt also signed the form but it is unclear whether or not he met with Plaintiff. R. 184.

On December 24, 2003, Plaintiff met with Charles M. Cohen, Ph.D., a psychologist who was acting as a consultative examiner for the Pennsylvania Bureau of Disability Determination. R. 148-53. According to Dr. Cohen, Plaintiff indicated that she did the

6

cleaning, shopping and cooking for herself and her four children. R. 150. Dr. Cohen diagnosed her with "bipolar disorder, fairly well controlled with medication." R. 150. Dr. Cohen noted moderate and marked restrictions with regard to instructions and interactions with supervisors and coworkers. R. 152.

On January 15, 2004, the state's psychological consultant, Manella C. Link, Ph.D., reviewed Plaintiff's medical records and completed an SSA form entitled "Psychiatric Review Technique." R. 154-70. Dr. Link based the medical disposition on Categories 12.04 ("Affective Disorders") and 12.09 ("Substance Addiction Disorders") of the Listings. R. 154. Dr. Link found mild and moderate functional limitations as a result of her Bipolar Disorder. R. 164. Dr. Link concluded that Plaintiff was either not significantly limited or moderately limited regarding understanding and memory, sustained concentration and persistence, social interaction and adaptation. R. 167-68. Dr. Link found no restrictions in her abilities in regard to understanding and memory and some limitation in dealing with work stresses and public contact. R. 169. After reviewing Dr. Cohen's opinion, Dr. Link found that it overestimated the severity of Plaintiff's functional restrictions and was "without substantial support from the other evidence of record, which renders it less persuasive." R. 169. Dr. Link concluded that Plaintiff was "able to meet the basic mental demands of competitive work on a

sustained basis despite the limitations resulting from her impairments." R. 169.

On February 3, 2004, Plaintiff met with another MBH social worker, who completed an Integrated Service Plan Review, which noted that she was "somewhat improved." R. 179-80. Plaintiff's GAF score was 62. R. 179. Dr. Garbutt also signed the form. R. 180.

On September 9, 2004, Plaintiff met with an MBH registered nurse, who completed another Integrated Service Plan Review, which noted that she was "worse." R. 177-78. Plaintiff's GAF score was 50. R. 177. Dr. Garbutt also signed the form. R. 178.

On January 7, 2005, another Integrated Service Plan Review was conducted, which noted that Plaintiff's progress was unchanged and that her current GAF score was 50. R. 175-76.

On April 19, 2005, Dr. Garbutt completed a "Statement of Ability to Do Work-Related Activities." R. 197-99. Dr. Garbutt restated the diagnosis contained in his September 3, 2003, psychiatric evaluation, including a reference to a current GAF score of 40. R. 197. Dr. Garbutt noted that Plaintiff had moderate and marked restrictions regarding instructions. He stated: "Patient has significant problems with memory and concentration which preclude her from following most instructions." R. 197. Dr. Garbutt also noted that Plaintiff had moderate and marked restrictions regarding workplace interactions. R. 198. He stated: "Due to the patient's mood swings associated with her bipolar disorder, she has

significant difficulty interacting with others." R. 198. With regard to sustaining concentration or persistence and pace in a work setting, Dr. Garbutt noted slight restrictions on performing activities within a schedule and marked restrictions regarding the other factors. R. 198. He stated: "Due to her mental illness she has significant problems with memory and concentration." R. 198.

## IV. **The ALJ's Decision**

The ALJ found that Plaintiff met the non-disability requirements set forth in section 216(i) of the Social Security Act and that she was insured for disability benefits through December 31, 2002. R. 25. Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that she was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ next applied the sequential evaluation process when reviewing Plaintiff's claim for benefits. At the time of the hearing before the ALJ, Plaintiff was 33 years old and had the equivalent of a high school education. R. 25. She had worked at several unskilled jobs.

At Step One of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability. R. 25. At Step Two, the ALJ found that Plaintiff suffered from medically determinable, severe impairments of Bipolar Disorder, PTSD and mixed substance

9

dependence. R. 25. At Step Three, the ALJ found that Plaintiff did not have an impairment that was severe enough to meet Listings 12.04, 12.06 and 12.09, found at 20 C.F.R. Part 404, Subpart P, Appendix 1. Moving on to Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at any exertional level as long as it involved nothing more than simple, routine, repetitious tasks with one- or two-step instructions and did require strict production quotas, contact with the public or more than occasional contact with the public and co-workers. R. 26-27. In making this determination, the ALJ considered the medical opinions of Plaintiff's treating psychiatrist, the consultative examiner and the state's psychological consultant. R. 26-28. The ALJ found that Dr. Garbutt's opinion, as set forth in his "Statement of Ability to Do Work-Related Activities," was not controlling because he simply checked boxes on the form and provided only general explanations that contained no references to treatment data. R. 28. The ALJ further explained that Dr. Garbutt's form was inconsistent with the MBH treatment records, which recorded Plaintiff's lowest GAF as 50, while Dr. Garbutt assigned a GAF of 40. R. 28. The ALJ found that Dr. Garbutt's opinion was also contradicted by the opinion of the consultative examiner, Dr. Cohen, a psychologist. R. 28. The ALJ favored Dr. Cohen because he found that Plaintiff was "capable within the scope of the RFC adopted here and gave a thorough explanation of his conclusions." R. 28. The

ALJ further found that Dr. Garbutt was contradicted by the state's psychological consultant, Dr. Link, who concluded that Plaintiff's mental impairments were severe but not disabling. R. 28. The ALJ makes no reference to Dr. Link dismissing Dr. Cohen's opinion due to Dr. Cohen's overstatement of the severity of Plaintiff's impairment and the lack of support in the medical record. R. 169. Thereafter, the ALJ resolved Step Four in Plaintiff's favor.

At Step Five, the ALJ consulted with a vocational expert because Plaintiff's ability to work was significantly compromised at all exertional levels due to her non-exertional limitations. R. 29. The ALJ asked the vocational expert to determine whether there were a significant number of jobs in the national economy that Plaintiff could perform, given her RFC and other factors. R. 29. Based on this testimony, the ALJ concluded that Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy and that, therefore, Plaintiff was not disabled. R. 30.

## V. Legal Analysis

Plaintiff alleges that the ALJ erred when he failed to give proper weight to the medical opinion of Plaintiff's treating psychiatrist, Dr. Garbutt.[1] Because the Court believes that the

---

[1] In the statement of her argument, Plaintiff characterizes Dr. Garbutt's opinion as concluding that she was "unable to work." Doc. No. 10, pp. 2, 7. Plaintiff does not cite to any evidence in the record to establish that Dr. Garbutt held this opinion, and this Court's careful review of the record
(continued...)

record is unclear as to whether proper weight was given to the treating psychiatrist's opinion in this case, it will remand the case for further consideration.

As the Third Circuit has specifically recognized, when assessing a plaintiff's application for benefits, the opinion of the plaintiff's treating physician is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(citing 20 C.F.R. § 404.1527). In fact, the regulations provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the Commissioner may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the Commissioner's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Plummer, 186 F.3d at 429.

The opinions of treating physicians are given greater deference because these doctors are "employed to cure and ha[ve] a

---

[1](...continued)
found none.

greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). This is especially true "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). In fact, the applicable regulations acknowledge the special ability of a treating physician when assessing a plaintiff's condition and provide as follows:

> [treating physicians] are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927(d)(2).

It is not clear that the ALJ's decision is consistent with these commands because it gave little consideration to the "detailed, longitudinal picture" of Plaintiff's impairments found in her treating psychiatrist's records while under the care of MBH and failed to reconcile the contradictory evidence found in the opinions of the state's consultative examiner and psychological consultant.

In assigning no significant weight to Dr. Garbutt's opinion, the ALJ concentrated on the form he completed on April 19,

13

2005. R. 28; 185-86. The ALJ discounted this form for two reasons, that it consisted of checked boxes and little explanation[2] and that it was not supported by the MBH treatment records. R. 28. The ALJ focused on Dr. Garbutt's assignment of a GAF score of 40, which was below the GAF scores noted in the MBH reports that he signed. While this is certainly inconsistent, it may be that Dr. Garbutt is merely referring to his original psychiatric evaluation, a possibility that the ALJ acknowledged. R. 28, 185-86. Beyond noting the GAF scores, the ALJ failed to take into account Dr. Garbutt's on-going treatment relationship with Plaintiff, as found in his initial evaluation, the subsequent Integrated Service Plan Reviews, and Plantiff's Medication Record. R. 177-96. These records provide a fuller understanding of Plaintiff's treatment history at MBH. It is not entirely clear why the ALJ concluded that Dr. Garbutt's opinion was inconsistent with the MBH records.

The ALJ also found that Dr. Garbutt's opinion was contradicted by the opinions of Dr. Cohen and Dr. Link but he offered little explanation. Most significantly, the ALJ did not acknowledge that Dr. Link discounted Dr. Cohen's opinion, which "was

---

[2] The Third Circuit has noted that form reports that require only checking a box or filling in a blank "are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). The reliability of such forms are suspect when they lack thorough written analysis. Id. The form used here provides room for more analysis than the form at issue in Mason, see Robletto v. Barnhart, Civil Action No. 05-4843, 2006 WL 2818431 at *5 (E.D.Pa. Sept. 28, 2006), though the Court has no opinion about whether the information Dr. Garbutt provided on this form is anything more than conclusory. On remand, the ALJ may decide to seek additional information from Dr. Garbutt. See 20 C.F.R. § 416.912 and Social Security Ruling 96-5p.

not given full weight due to inconsistencies with the totality of the evidence on file." R. 169. Where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429). In general, "the opinions of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if the doctor had treated or examined him." Morales, 225 F.3d at 320. Here, the ALJ considered the opinions of Dr. Cohen, who examined Plaintiff, and Dr. Link, who did not, and found that they both contradicted Dr. Garbutt, when, in fact, Dr. Link discounted the opinion of Dr. Cohen because it overstated the severity of Plaintiff's impairment.

In short, the record simply does not permit the Court to determine whether the ALJ's decision to afford no significant weight to Plaintiff's treating physician is supported by substantial evidence. Accordingly, the Court will remand for the ALJ to re-evaluate Plaintiff's impairments. On remand, the ALJ should appropriately weigh the medical evidence of record and fully develop his reasons for affording the weight given to such evidence.

## VI.     Conclusion

The Court finds that substantial evidence does not support the ALJ's decision in this case. Accordingly, the Court will remand

15

for the ALJ to re-evaluate Plaintiff's mental impairments.  In particular, the ALJ should reconsider the weight to be given to the medical evidence of record and more fully develop his reasons for affording that weight.

                                             *Maurice B. Cohill Jr.*
                                             United States District Judge
                                             (for Judge Alan N. Bloch)

ecf:        Counsel of record